(99 App. Div. 588.)

KENNEDY v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. December 15, 1904.)

1. TRIAL—DIRECTED VERDICT.
   Where both parties moved for verdict, the verdict directed was in effect that of the jury.

2. MUNICIPAL CORPORATIONS—CONTRACT—EXISTENCE—EVIDENCE—SUFFICIENCY.
   In an action against a city on a lighting contract, in which the defense was that the contract was void because when made there was in existence a contract by the city with another lighting company, to which the total appropriation for lighting was legally applied, evidence examined, and *held* not to establish the existence of such other contract, so as to render a verdict based on a contrary conclusion erroneous.

3. SAME—CONTRACT FOR LIGHTS—VALIDITY—EXCEEDING APPROPRIATIONS.
   In an action against a city for furnishing lights under a contract duly executed, the city cannot escape payment on the plea that there was a prior existing contract under which the common council had appropriated all of the taxes laid for lighting purposes, when it appeared that such appropriation was not compulsory by the terms of the former contract, but was an arbitrary act of the city in disregard of the obligations of the second contract.

4. SAME—CONSTRUCTION OF CONTRACT—PERFORMANCE BY PLAINTIFF.
   Though a contract to furnish lights to a city required lights from sunset to sunrise, a failure to perform, forfeiting right of recovery thereunder, was not shown by evidence that lights were not always so furnished, in view of another provision for a rebate pro rata according to the time that lights were not lighted during any of the time therein provided.

5. SAME—ESTOPPEL—FAILURE TO PERFORM.
   Where, in an action on a contract for furnishing lights to a city, it did not appear that the city had ever complained that a failure to furnish lights within certain hours was not within a provision of the contract permitting a rebate pro rata according to the time lights were not so furnished, the city was estopped to deny that there was a failure to perform, forfeiting recovery under the contract.

Appeal from Trial Term, Queens County.

Action by James Kennedy against the city of New York, successor to the city of Long Island City. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

James D. Bell, for appellant.
Hector M. Hitchings, for respondent.

JENKS, J. Inasmuch as both plaintiff and defendant moved for the verdict, the verdict directed is in effect that of the jury. Adams v. Roscoe Lumber Co., 159 N. Y. 176, 53 N. E. 805; Smith v. Weston, 159 N. Y. 194, 54 N. E. 38.

The plaintiff's case is sufficient to establish that a contract for the electric lighting of certain streets in Long Island City from January 1, 1892, to May 1, 1896, was duly authorized and executed, and that light was furnished thereunder and not paid for. The

¶ 1. See Trial, vol. 46, Cent. Dig. § 400.

defenses are that the contract was void and was not fulfilled. The ground of the first defense is that, when the said contract was made, there was in existence a contract with an illuminating gas company, and that the total appropriation for the lighting was legally applied to it. But, first, it cannot be said that the defendant established that there was such a contract, so as to render a verdict based upon a contrary conclusion erroneous. The defendant read in evidence a resolution that the mayor and city clerk be directed to enter into a contract with the gas company for five years from January 1, 1885, and another and subsequent resolution that, whereas by the terms of that contract it was agreed that the company should lay five miles of additional mains during the term of said contract and connect street lamps therewith, it should have the right and option to a renewal of said contract as therein provided; and whereas these things had been done, and the company had elected to renew, that the mayor and city clerk should execute and deliver a proper renewal. The term of the electric lighting contract must have been covered, if at all, by a renewal of the original five-year gas-illuminating contract made in 1885. But the renewal contract was not produced, nor was it proven that it ever existed. The custodian of the records of Long Island City, who produced all of the documentary evidence read by the defendant, testifies that there is no original contract of renewal on record in his office. The custodian of the records of the gas company testifies that his thorough search could not disclose a certified copy of a contract with the gas company with Long Island City in 1894. An attorney who had recently brought suit on behalf of the gas company for lighting testifies that he had a certified copy of the original contract, dated in 1884, and that there was indorsed thereon an agreement of renewal, "of which the following is a copy, * * * that the original contract was offered in evidence before a referee, and that that copy was then marked and used in evidence in place of the original before the referee, for a time," but that he never saw the original on file in the city clerk's office. The record before us reads: "The copy was offered in evidence by the defendant, and received (see Appendix, p. 43)." But examination of Appendix, p. 43, does not show any such exhibit. On page 42 there is Exhibit 5, which runs over into page 43, but this is but the resolution which I have heretofore described—that the "mayor and city clerk be, and they hereby are, directed to execute and deliver the proper renewal of said contract according to the terms and conditions thereof."

But assuming that such a contract existed, there is a defective premise in the defendant's proposition. That proposition is: The appropriation for lighting the streets in 1892 was $42,300; the cost of lighting under the prior gas contract was $39,295; ergo, the common council were powerless to execute the electric lighting contract involving payments in excess of the appropriation. Conceding that the sole source of payments upon such a contract was the appropriation, yet the defective premise is that the cost of lighting under the illuminating gas contract was $39,295, which, in order to justify the conclusion, should read that at the time of the exe-

cution of the electric lighting contract the existing illuminating gas contract absolutely and necessarily required the application of $39,295. I do not find evidence to justify such premise. We are apprised that the original illuminating gas contract was for lighting street lamps at a fixed sum per lamp. But it does not appear that any total sum was called for or required, or what number of lamps the company was entitled to light irrespective of the power of regulation or reduction vested in the city. The fact that, six months after the execution of the electric lighting contract and the entry upon its performance, the common council, upon a recital of necessity, voted to apply the entire appropriation for the year to the gas illuminating contract, is no proof that it was required to do so by the terms of that contract. For aught that appears, when the electric lighting contract was made there was an appropriation which was subsequently sought to be applied exclusively to the gas illuminating contract. If there was no appropriation applicable in whole or in part, and if the resolve was required by the law in view of existing obligations, then it was incumbent upon the defendant to show those things, instead of interposing this belated resolve, which appears to be arbitrary and not required by law. I have discussed this phase of the question upon the defendant's proposition that the sole source of payment was an appropriation, and that therefore the contract was invalid. In the face of a contract duly made, the city should not be allowed to escape payment for light furnished and accepted thereunder on the plea that there was another existing contract under which the common council had appropriated all of the taxes laid for lighting purposes, when such appropriation was not compulsory by the terms of the gas illuminating contract, but appears to have been an arbitrary act in utter disregard of the obligations flowing out of the electric lighting contract. Nelson v. The Mayor, 63 N. Y. 535; Leonard v. Long Island City (Sup.) 20 N. Y. Supp. 26; Kramrath v. City of Albany, 127 N. Y. 575, 581, 28 N. E. 400.

It is contended that the contract was not fulfilled, because, while in terms it required lights from sunset to sunrise, light was furnished only after 1:30 a. m. But the contract also provided:

"In case for any reason any of such lamps are not lighted and lights are not furnished during any of the times herein provided or during the hours herein provided for, a rebate pro rata according to the time they are not so lighted shall be made from the amount here provided to be paid, and in case the light furnished is not equal to the candle power herein provided, a rebate pro rata according to the deficiency in candle power shall also be made."

I think that this sufficiently contemplates the variation of the hours of furnishing the light. It does not appear that the defendant or its predecessor ever raised the contention heretofore that the variation was not within this provision of the contract, and it is now foreclosed thereby. Baird v. Mayor, 96 N. Y. 567.

The judgment and order should be affirmed, with costs. All concur.